Margo Northrup, we'll hear from you when you're ready. Good morning. May it please the court, counsel. My name is Margo Northrup. I'm an attorney in Pierre, South Dakota. I'm in private practice, but I also serve on the panel, and this was a case that I took as a panel attorney in the Central District of South Dakota. Yes, and the court notes that you were appointed under the act and appreciates your willingness to accept the appointment. Thank you, Your Honor. Following the trial, Ms. Waloke filed a motion pursuant to 26 in Rule 29 asking for a judgment of acquittal and also a motion pursuant to Rule 33 asking for a new trial, primarily on the insufficiency of the evidence. Ms. Waloke was found guilty of harboring a person from arrest, which is a violation of 18 U.S.C. 1071. The facts have been outlined in great detail by both parties in the brief. So in reference to the first two elements of that statute, whether a federal warrant was issued and whether the defendant had knowledge of the warrant, those two issues are not contested. These events happened over a two-day time period, and it was clear by testimony that both Everett and September had the FBI or the U.S. Marshals come to their home and notify them of the warrant. So the elements that we're really looking at are elements three and four, whether or not the defendant actually harbored or concealed the fugitive and whether the defendant intended to prevent the fugitive discovery or arrest. Now, the relevant facts in reference to those two elements happened when Sergeant Reedy, who's a member of the Tribal Law Enforcement, came to the home of September and Everett, knocked on the door, asked after less than a minute, Ms. Waloke answered the door. Sergeant Reedy asked Ms. Waloke if the fugitive was in the home and whether her daughter was in the home. She denied. He asked if he could come into the home. She allowed him to. At this point, she turns around and walks back to the stove. Her husband, her common-law husband, Everett Condon, is sitting at the table in the same area. He asked again if the fugitive's in the home. September asked her husband, Mr. Condon, he's not here, you haven't seen him. Everett also denies that he's in the home. Officer Reedy then asked if he can commit a search, which September Waloke allows him to do. And after a search, the fugitive is found in the home. Yeah, so the government says there's enough for a jury to find harboring or concealment. And I gather it's because a jury can infer that she allowed the man to stay there the night before. And then when the police came, she delayed at least some period of time, which could have allowed him to hide in the mattress and then lied about whether he was there. Why isn't all that together enough to allow a reasonable jury to convict? So the first issue is that Ms. Waloke did the same exact actions as Mr. Everett Condon, her common-law husband. I don't know where that gets you. If there's an inconsistent verdict, how does that justify setting aside Waloke's conviction? I think under Rule 33, you'd be able to grant a new trial if there was a finding that those were inconsistent due to the facts. The case that the court relied on, and I think that the government relies on, is the Stegmaier case, where it's distinguishable by the facts. I mean, first of all, they traveled in an RV, got him a job, cashed his check. And they cite this overwhelming or this kind of overarching premise that providing a place to stay satisfies the requirement of the physical act. But if you go back and you look at the case that they're citing, that's the Erdman case. And in that case, the facts are distinguishable because there was a lot more than just allowing someone to stay in the home. They changed the color of the vehicle. They got him a job. No question, most cases have more than this, but why isn't allowing someone to stay and then delaying when the police try to come look for him, why isn't that enough? And so to that point, I really think that the element that we're looking at is whether or not she intended to prevent his discovery. And the primary case that's directly on point in reference to that issue is State v. Hash, which is an 8th Circuit case. And in that case, law enforcement came to the door, the defendant lied and said, no, he's not here, and she denied entry. And I think that's the distinguishable point is that she denied entry. And that's later, I think probably four or five minutes later, he comes to the door and they find that because she denied the entry that that meets the standard. Now you're on intent. I'm sorry, you're now on the intent element. Yes. Not on the harboring. Okay. Correct. Suppose the delay allowed, and I have a question about the act, and I'll ask in a moment. But suppose the delay allowed the fugitive to climb out the window. That would seem to be a problem under the statute. Here it was to hide under the mattress, as it turned out. But wouldn't that fulfill the intent, particularly if September knew that? If, well, I mean, the facts of this case is that, I mean, they actually had surrounded the home, and so, I mean, that fact pattern couldn't have happened. Sure, in this case. Right. But the issue really is the timeframe. I mean, she allowed them to search her home, and she answered the door within a minute. I mean, Officer Reedy didn't testify that that seemed like a really long time. That was actually counsel that argued that during the closing argument. It wasn't Officer Reedy that argued that she delayed going to the door. You know, after the conversation, I mean, the whole time, from the time he entered the home until the time that he left the home, was only a 10-minute timeframe. So it's not like it was a large delay. I wanted to follow up, too, on the act really quickly before you completely leave it. You know, the government relies on Stegmaier, and there's a couple lines. I think this is on page 579 where it says, just plain and simple, providing the fugitive a place to stay, however, satisfies the requirement for physical assistance. Why isn't that just the end? I mean, I understand you can distinguish it, but that looks to be a categorical statement. If you give them a place to stay, the physical act requirement is done. And I would argue that that cites Erdman, and if you go back to Erdman, the actual quote itself, let me find it for you, it doesn't limit it just to providing them a place to stay. There's three others. We'd have to kind of look behind the veil there to accept your argument. I just wanted to be clear about that. Yep, absolutely. I think that you have to look at Erdman, and then you also have to look at the Hayes case, which it's an overarching statement that having stayed there is enough, but it's inconsistent with other cases that I've cited that are not in the Eighth Circuit. If you look at the Foy case, in that case they granted entry, and they found that that didn't meet the standard. In the Fourth Circuit and the Seventh Circuit, there's a Mitchell case and a Stacy case. One is where the foot got caught in the door, and so that was preventing discovery or entry. And the other one was whether they closed and locked the door. So I think the real distinction in our case, and the reason that it can be overturned, is the fact that she allowed them into the home. She did not lock the door. She did not try to shut the door. She didn't try to keep law enforcement out. She allowed them to search. And at this time, unless there's other questions, I would reserve my time for rebuttal. Very well, you may do so. Thank you. Mr. Parsons, you may proceed. Thank you, Your Honor. May it please the Court and Ms. Northrup. Here, in this case, this is purely sufficient to the evidence case. The evidence supporting the convictions is pretty simple, but it's powerful, and that is that September was with her daughter, Carly, and her daughter's boyfriend, the fugitive, Tyler LeCompte, before he absconded. They were bringing some clothes to him so he could attend the funeral of his aunt. And September talked to Tyson there, interacted with him and with Carly. They were together. Then Tyson went to the funeral. September and Carly didn't go. But he left the funeral to go party and smoke meth and never returned when he was supposed to return. When he doesn't show up back to the jail, the warrant is issued and the officers are in Eagle Butte. They go out to Cherry Creek because they have the tip that's probably where he is. They go there, and September interacts with the U.S. Marshals at that time and says, there's no reason Tyson would never be here. My daughter is not with him anymore. I don't know where he is. He would never be there. There's no reason. We don't get along anymore. So that was the first development of a ruse, a lie. She lied because she was with him that day. And that's further evidenced by the fact that But she wasn't harboring him at that point, was she? No, was not harboring him at that point. But that goes to show the intent and the state of mind as this ruse develops. Eventually, the plan is made between Tyson and his sister, Braxton, that she will pick him up at September's house, the defendant's house here, and they will flee to Rapid City. That's the plan that Braxton testified she had with Tyson. And the next morning, Tyson gets to September's house, and Carly, they get there. I think the testimony is around 5 a.m. to 7 a.m. And they go to sleep. And Braxton is on her way to pick up Tyson so they can flee to Rapid City so he can avoid capture. And she calls the number that Tyson had called her from the previous day. Who answers the phone? September. It's September Wloki's phone. Is there actual evidence that she knew the plan, that she knew that Braxton was going to take Tyson to Rapid City? There's not direct evidence. It's circumstantial in its inferences. Is that a problem? I mean, here's the thing on the intent that bothers me, and I think the intent case is a little weak here, to be honest with you. It could be that you could harbor a fugitive, which would satisfy the actus reus, but with the idea, look, it's 3 o'clock in the morning, no police stations are open, I'm going to take the fugitive into the U.S. Marshals or to the police station tomorrow. If she's harboring the fugitive not knowing where the fugitive is going to go in the morning or whatever, does that present a problem for the government? I don't think it presents a problem in this case because there is evidence. In a case where there's absolutely no evidence, it might be a different story. The jury might see that differently. But here, as the story continues, Braxton calls and September says, oh, he's here, he's sleeping, he's okay, and we'll see you later. And then there's a tip, the Cheyenne Sioux River tribal police officers show up and knock on the door, there's a delay in opening it. That's testified on page 376 of the trial transcript. They go in, they're let in eventually. September then continues the lie that she started before. I haven't seen him, have you seen him? No, I don't know where he is. She's already told Braxton, yeah, he's in my house, he's sleeping. So she's lying. She delayed. He asked four times, can I search the house? The fourth request, and she's delaying, stalling. Finally, she says, okay, I guess you can search the house. And the government's view, that's what makes it different from the hypothetical I gave, just harboring a fugitive. At that point, she's actively assisting, perhaps, keeping the marshals from getting at him. Not only assisting, but there's circumstantial evidence that she's in on this ruse. There's more circumstantial evidence. Carly comes out of the bedroom and shuts the door in an obvious manner, obvious to the officer. He's not supposed to go in there. He goes right in and opens the door, and there is Tyson. There's a big lump. He's between the mattress and the box spring. There's a big lump in the middle, but the bed is very carefully made over the bed. So someone has made it after Tyson's got in, presumably Carly. She had time to do that because September was stalling. But then when he's brought out, so he sees him, he pulls him out, and he goes, come on out, Tyson. He knows him, the officer. They sit him down, and there's no surprise by September. Oh, what are you doing here? I didn't know he was here. They all are just so sad because they know he's going back to prison. They're hugging him, crying, and they say goodbye. After he's gone, a few minutes later, 10 minutes later, Braxton shows up to pick up Tyson, to take him to Rapid City to flee, and September says, you just missed him. He's gone. So all of that certainly gave enough evidence for the jury to conclude that there was certainly concealment, and the court is exactly right. The Stegmayer case says flat out providing the fugitive a place to stay satisfies the requirement for physical assistance. The Foy case, the Seventh Circuit case, contradicts Eighth Circuit precedent, I would suggest. This court has never cited it, and no district court in the Eighth Circuit has ever cited it in a published opinion because it contradicts Eighth Circuit law. And there in Foy, they said that just lying, merely lying, is not enough with some other act of physical assistance. I think the distinction that Foy was probably trying to get at, even though I think it was decided wrongly, is that if someone comes to your house and says, hey, do you know where this fugitive is, and you know he's at your cousin's house across town, but you lie, you say, I don't know. I don't know where he is. That's not harboring or concealing a fugitive. But if it's your house, if they come to your house and they say, do you know where this fugitive is, and you are harboring him, hiding him in your house, and you lie, I think that satisfies. And it's certainly under Eighth Circuit law. Are you saying it tends to show intent or it's further evidence of harboring? I think it's both. You're intending by lying and knowing that he's there, preventing them from coming in or trying to throw off the scent, I think that's enough to show intent, to create an inference of intent that a jury could assess. So I think Foy, if it were decided in the Eighth Circuit, I believe it would be decided differently because I think there was enough in Foy. The other cases, you know, it's a long line of cases, and counsels mentioned them, the Hayes case, Erdman, Uday. This court said in Uday, with the knowledge of the outstanding warrants, Russell allowed Call to stay in his home, thereby concealing Call from the law enforcement agencies that sought his arrest. Conviction affirmed. In the Hash case, there's no minimum duration of concealment. It makes clear any amount of delay, stalling, can qualify as concealment. So I would respectfully suggest that the jury got this right. The jury was the trier of fact. The jury assessed credibility, and there's no basis to reverse in this case. What about the point that the acquittal of the husband on what counsel says are essentially the same facts suggests a possible miscarriage of justice that at least ought to warrant a new trial? We certainly thought he should have been convicted, but there's a lot of distinction between the two defendants. There's no evidence at all that Everett lied about the relationship between Carly and Tyson. There's no evidence that Everett knew that Braxton was on her way to the house. He wasn't on the phone with Braxton saying, yeah, Tyson's here, and I know you're coming. And when the officers came to the door, the Cheyenne tribal police officers, Everett was just sitting at the table. I mean, he didn't do anything other than say no, one simple statement, no, when September asked him if he knew where Tyson was. So there was a lot less evidence against Everett, and we disagreed with the acquittal of him, but of course we accept the jury's verdict and we live with it because that's what we do. They're the trier of fact. Thank you, Your Honor. We ask that you affirm. Thank you for your argument. Would you care to make rebuttal, Ms. Northrop? You may proceed. Thank you, Your Honor. I don't think that the state of the law is the fact that you have someone in your home that you know has a warrant makes you guilty of this statute. And by citing Stegemeyer that says by providing someone a place to stay meets the physical assistance element doesn't get you all the way there. You still have to have the fourth element, which is intended to prevent the fugitive's discovery or arrest. And as I've indicated, I think that that fact, the fact that she allowed them into the home, allowed them to search, and there's case law that says a lie is not enough to convict under the statute, that that's the distinction that would allow you to reverse this case. And I would ask that you do that. Very well. Thank you for your arguments. The case is submitted. The court will file an opinion in due course. Counsel are excused.